271 So.2d 854 (1973)
STATE of Louisiana
v.
Leonard Jerome BASTIDA.
No. 52777.
Supreme Court of Louisiana.
January 9, 1973.
Elie, Strickler & Dennis, George M. Strickler, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
Leonard Jerome Bastida was jointly tried with two co-defendants, before a jury, on the charge of having committed armed robbery in violation of La.R.S. 14:64. All three defendants were found guilty.
Bastida appeals his conviction and sentence to serve twenty-five years in the state penitentiary. Six bills of exceptions were reserved and perfected to alleged erroneous rulings by the district court, four of which form the basis of this appeal. Bills of Exceptions Nos. 2 and 5 were expressly abandoned in brief.
Bills of Exceptions Nos. 1, 3 and 4 all pertain to the validity of the search warrant *855 and the suppression of evidence resulting therefrom. Specifically the defendant attacks the warrant on two grounds: (1) that even if the search warrant stated a probable cause to believe that Bastida had committed a robbery, it was not sufficient to cause the issuance of the search warrant of his residence, and (2) the affidavit supporting the application for the warrant did not contain any information whatsoever as to the location of the premises to be searched.
An evaluation of the constitutionality of a search warrant begins with the rule that the informed and deliberate determination of probable cause is to be made by the neutral and detached magistrate, rather than by the police officer.
Defense counsel advances a very good argument, citing United States v. Flanagan, 423 F.2d 745 (5th Cir., 1970) as authority, that:
"The statement, even if reliable, (in an affidavit), that a named person who is a known felon has committed a burglary, plus possession by the suspect of some of the proceeds when arrested, does not without more authorize the issuance of a warrant to search the residence of the accused miles away." 423 F.2d at 745.
However, such is not the case here.[*]
If for no other reason, the warrant was properly issued to search for the automatic weapons used in the armed robbery. It is true that the robbery occurred April 7, the *856 detective received the information from his informant on April 8, and the warrant issued when applied for on April 17. The time lag might have affected the issuance for a narcotics search or even to search for the stolen money. Nevertheless, there was a reasonable inference from the affidavit, and probable cause to issue the warrant to search defendant's house for automatic weapons used in the robbery.
The Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Louisiana Constitution, in identical language, both state the requirement as to identifying the place to be searched as being broadly designated in the warrant, thus:
"* * * supported by oath or affirmation, and particularly describing the place to be searched * * *".
La.C.Cr.P. Art. 162, in its pertinent part, states:
"* * * When a warrant authorizes the search of a place, it shall designate the place to be searched * * *" (Emphasis added).
Here, the place designated to be searched, was characterized in the affidavit as "* * * the residence of Leonard Bastida * * *". The search warrant itself designated the residence located at "621 Alvar Street, in the rear". There is no dispute Bastida's residence is located as designated in the warrant and was, in fact, the place searched.
Defense counsel, in his brief, relies heavily on State v. Lee, 247 La. 553, 172 So.2d 678 (1965) in which this Court held a search warrant invalid because the address of the place to be searched on the face of the warrant was changed from 2127 Bienville to 2132 Bienville after the issuance of the warrant. We do not find that case applicable as no municipal numbers were changed here, but rather a specific street address with a specific municipal number was in the warrant issued based upon a perfectly legitimate general description of the place to be searched. The test of particularity is satisfied for there can be no doubt in the minds of the officers executing the warrant as to the premises to be searched. We find defendant's argument in this regard untenable.
We conclude that the circumstances here fall within the guidelines espoused in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) that the issuing magistrate could independently judge the validity of the affiant's statements and that the affidavit adequately supported the search warrant with sufficient particularity as to location of the place to be searched, and thus the trial court properly denied the defendant's motion to suppress.
These bills are without merit.
Bill of Exceptions No. 6 was taken to the trial court's denial of the defendant's Motion for a New Trial. This motion was based upon two factors: a post-conviction confession by Gilbert Sanchez, a codefendant who had also been convicted, that Bastida had not had anything to do with the crime but that one Juan Amador was in fact his accomplice; and the testimony of one Humberto Ramirez, who had once served time in the penitentiary with Bastida, at the hearing on the motion that the alleged accomplice Amador had an identifying tattoo similar to that of Bastida's which could have easily been mistaken by the identifying victim.
*857 The trial judge in his per curiam found the new testimony of Sanchez highly suspect, choosing not to believe it. Although the trial judge did not comment on the testimony of Ramirez in his per curiam specifically, he did reaffirm that "in view of all the witness' testimony, and the victim's identification of the tattoo marks on the shoulder of Bastida", he could not see to grant the Motion for a New Trial.
This Court has repeatedly held the trial judge has wide discretion in ruling on a Motion for a New Trial. Since the judge found as a fact that the allegedly newly discovered evidence is incredible, his denial of a new trial will not be disturbed on appeal. State v. Miller, 254 La. 73, 222 So.2d 862 (1969); See also State v. Cancler, 252 La. 380, 211 So.2d 298 (1968), and authorities there cited.
This bill is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
SUMMERS, J., is of the opinion the decree only is correct.
BARHAM, J., dissents and assigns reasons.
BARHAM, Justice (dissenting).
I am of the opinion the search and seizure were unconstitutional, in violation of the Fourth Amendment of the United States Constitution and Article I, Section 7, of the Louisiana Constitution, because the search warrent was invalid. Based upon the affidavit (set forth in footnote in the majority opinion), the warrant ordered the search for the following property: "Automatic pistols, rifles, heroin, barbiturates, amphetamines, marijuana, and narcotic administering paraphernalia, knives, and stolen credit cards". Probable cause is not established in the affidavit for this broad and all-inclusive search and seizure. The warrant provides the police with authority to search for evidence of crimes unrelated to the crime charged and unrelated to any information in the affidavit. The fact that probable cause may exist to search for particular property will not make constitutional a search warrant so broad as this one, especially when the warrant exceeds the scope of the affidavit.
I respectfully dissent.
NOTES
[*] The affidavit reads: "The reasons and facts for the request of this search warrant are: On Friday, April 7, 1972, at about 9:00 PM, a white male named Eurie Marie, residing 600 Bellville, was the victim of an armed robbery which occurred at 4905 Canal St., on the above date and time. Mr. Marie stated that he had received a phone call from a white female whom he knows as Tina Bacon. Mr. Marie stated that he knows this subject for about 10 years. Tina Bacon requested that Mr. Marie meet her at the Beachcorner Lounge, located in the 4900 block of Canal St., at 9:00 PM, stating that she wished to speak to him. Mr. Marie stated that he left his residence to meet this female. At about 9:30 PM, Mr. Marie stopped his car in the 4900 block of Canal St., and at this time, Mr. Marie saw Tina Bacon sitting in the 4900 block of Canal St., with two Spanish type males. Mr. Marie got out his car and at this time, he heard Tina Bacon tell the two while males `That's him'. At this time, the two white males approached Mr. Marie and both subjects pulled knives and automatic pistols. Both subjects began to stab and cut Mr. Marie about the arms and body. One of the subjects removed Mr. Marie's wallet containing $250.00, and both subjects fled on St. Anthony St. in a downtown direction. Mr. Marie then called the police. On Saturday, April 8, 1972, at about 8:00 PM, Dets. Strada received a phone call from a confidential informer who has given him reliable information in the past, who stated to Det. Strada that a Spanish male namely, Leonard Bastida, about 28 yrs. old, and another subject named Terry Morgan, WM, 24, had just told him about an armed robbery they committed Friday night, and that they cut the guy pretty bad and they thought he may have died. These two subjects stated to the informer that they had gotten about $200.00 from the subject. The informer also noticed that both of the subjects were carrying automatic pistols on them at this time. On Monday, April 10, 1972, Det. Strada went to the B of I and pulled a photograph of Leonard Bastida and along with five other photographs showed them to the victim of the Robbery, Mr. Marie. After looking through the photographs, Mr. Marie picked the photograph of Leonard Bastida and stated that this looks very much like one of the subjects who robbed him and stabbed him, but he is not positive from the photograph. On April 16, 1972, a photograph was obtained from the B of I of Terry Morgan and was shown to Mr. Marie along with other photographs. Mr. Marie picked the photograph of Terry Morgan and again stated that he thinks this is one of the subjects, but he is not sure. The informer stated to Det. Strada that Leonard Bastida is a narcotics addict and on the night the informer spoke with Bastida and Morgan, both of the subjects had heroin in their possession and stated that they were going to Bastida's residence to shoot up. Bastida is also known by Det. Strada to be a narcotic addict as Det. Strada has known Bastida for about 12 years. For the above stated reasons, Det. Strada requests that this search warrant be signed giving permission to searc the residence of Leonard Bastida for the above named property. On Tuesday, April 11, 1972, Mr. Marie came to the Detective Bureau and gave Det. Strada a photograph of a white female whom he stated is Tina Bacon. Mr. Marie stated he got the photograph from a school year-book and he positively identified the photograph as being Tina Bacon. Det. Strada's informer stated that he knows Tina Bacon to be associated with Leonard Bastida and Terry Morgan. It should be noted that the above mentioned informer has given Det. Strada reliable information in the past that has resulted in the arrest and conviction of numerous felons about the city for crimes similar to this one, and also in the recovery of stolen property taken in these crimes."